Affirmed and Memorandum Opinion filed June 27, 2006









Affirmed
and Memorandum Opinion filed June 27, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00533-CR

____________

 

WILLIAM D=ANGELO
SMITH,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 263rd
District Court

Harris County, Texas

Trial Court Cause No. 997,014

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant, William D=Angelo Smith, of aggravated robbery,
and the trial court assessed punishment at eighteen years= confinement in the Texas Department
of Criminal Justice, Institutional Division. 
On appeal, appellant alleges the evidence is legally and factually
insufficient to support his conviction. We affirm. 

Factual and Procedural Background








Around 3:00 A.M. on August 11, 2004, Bryan Orrell was robbed
at gun point next to the Modo Inn Motel in Houston, Texas.  Earlier that evening around 9:00 P.M., Orrell
was introduced to Barbara Reddicks, and they spent most of the evening in
Orrell=s apartment.  Sometime shortly after 2:00 A.M., Reddicks
asked Orrell to take her back to the Modo Inn, so she could retrieve something
from her room.[1]  When they arrived at the Modo Inn, Reddicks
asked Orrell to wait downstairs in his car while she went inside. 

While driving around waiting for Reddicks, Orrell saw two
young black men on the side of the road, and he stopped to ask them if they
knew Reddicks= whereabouts.  The men told Orrell that Reddicks would be
right back and asked him to pull over to the side of the road.  Orrell pulled over with his windows down and
turned off the car.  Almost immediately,
the men leaned into Orrell=s vehicle and began to attack him.  One of the men pointed a gun in Orrell=s face, while the other struggled to
reach into Orrell=s back pocket to get his wallet.  Reddicks was standing nearby talking to her
friend, Shirley Luna, when she noticed the two men attacking Orrell.  Reddicks ran over to the vehicle and yelled
at the two men to leave Orrell alone. 
The men were finally able to grab Orrell=s billfold out of his back pocket and
fled. 

Around this time, deputies Trevor Windsor and C.M. Kowis of
the Harris County Sheriff=s Department were on patrol in the area and responded to a
call to check out two suspicious vehicles. 
Deputy Windsor noticed two vehicles parked on the side of the road and
saw two men run away from the vehicles. 
They approached the vehicles and saw Orrell sitting inside one of them,
bleeding from a large gash on his face. 
Orrell told the deputies he had just been robbed, and Deputy Kowis set
up a perimeter to contain the suspects in the area.  Shortly thereafter, they detained two
suspects, including appellant.  Deputy
Windsor took appellant to the police station where appellant voluntarily gave a
statement admitting he was at the scene when the robbery against Orrell
occurred, but he claimed he was merely a bystander to the robbery and his
friend AChuck@ approached Orrell=s vehicle and committed the robbery. 








When the suspects were found, Orrell was unable to identify
appellant as his assailant because, as he testified, he could not get a good
look at the robbers during the struggle. 
Reddicks, however, was able to identify appellant as one of the robbers,
and she testified she knew appellant because she bought crack cocaine from him
earlier that evening. 

Discussion

I.                   
Standards
of Review

In a legal sufficiency review, we view all the evidence in
the light most favorable to the verdict and then determine whether a rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Salinas v. State, 163
S.W.3d 734, 737 (Tex. Crim. App. 2005). 
The jury is the sole judge of the credibility of the witnesses and
chooses whether or not to believe all or part of the witnesses= testimony.  See Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988).  We do not
engage in a second evaluation of the weight and credibility of the evidence,
but only ensure the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.BHouston, [14th Dist.] 2005, pet. ref=d). 
Thus, if there is evidence establishing guilt beyond a reasonable doubt,
we are not authorized to reverse the judgment on sufficiency of the evidence
grounds.  See Harris, 164 S.W.3d
at 784. 








In a factual sufficiency review, we consider all the evidence
in a neutral light and determine whether a jury was rationally justified in
finding guilt beyond a reasonable doubt. 
Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  The evidence may be factually insufficient in
two ways.  Id.  First, when considered by itself, evidence
supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt.  Id.  Second, where the evidence both supports and
contradicts the verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Id. at 484B85. 
Our evaluation of the evidence should not intrude upon the fact-finder=s role as the sole judge of the
weight and credibility of the evidence.  See
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).   In conducting a factual sufficiency review,
we must discuss the most important evidence appellant claims undermines the
jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  

Appellant was charged with aggravated robbery as primary
actor and as a party.  A person is
criminally responsible as a party to an offense if the offense is committed by
his own conduct, by the conduct of another for which he is criminally
responsible, or by both.  TEX. PENAL CODE
ANN. ' 
7.01(a) (Vernon 2003).  A person
is criminally responsible for an offense committed by the conduct of another
if, acting with intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense.  Id. ' 
7.02(a)(2). Whether the accused participated as a party to an offense
may be determined by examining the events occurring before, during, and after
the commission of the offense and by examining the actions of the accused that
show an understanding and common design to commit the offense.  King v. State, 29 S.W.3d 556, 564 (Tex.
Crim. App. 2000).  Evidence is sufficient
to convict if the defendant is physically present at the commission of the
offense and encourages its commission by words or other agreement.  Ransom v. State, 920 S.W.2d 288, 302
(Tex. Crim. App. 1994). 








A person commits robbery if, in the course of committing
theft,[2]
he (1) intentionally, knowingly, or recklessly causes bodily injury to another,
or (2) intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death.  TEX.
PENAL CODE ANN. ' 29.02(a)(1)B(2) (Vernon 2003).  A
person commits aggravated robbery if he commits robbery and uses or exhibits a
deadly weapon.  Id. ' 29.03(a)(2).  A deadly weapon is a firearm or anything that
in the manner of its use or intended use is capable of causing serious bodily
injury or death.  See id. ' 1.07(a)(17) (Vernon Supp.
2005).  An affirmative finding may be
entered against a defendant who never used or brandished a deadly weapon during
the commission of the offense, so long as he (1) was a party to an offense
where a deadly weapon was used or exhibited and (2) knew such a weapon would be
used or exhibited.  See Tex. Code Crim. Proc. Ann. art. 42.12 ' 3g(a)(2) (Vernon Supp. 2005).  

II.                
Analysis

Appellant contends the evidence is legally and factually
insufficient to support his conviction for aggravated robbery.  Appellant presents several arguments in
support of this point of error: (1) the victim, Bryan Orrell, was unable to
identify appellant as the perpetrator; (2) Barbara Reddicks, an eyewitness, was
under the influence of narcotics at the time; (3) the responding officer
testified that none of the State=s witnesses were credible; (4) Orrell
lied during his testimony; and (5) two witnesses for the defense testified
appellant did not participate in the crime. 
We will address each of these arguments in turn.  








Appellant first argues the evidence is legally and factually
insufficient because the victim, Bryan Orrell, was unable to identify appellant
as the perpetrator.  Evidence may be
sufficient to support a conviction for aggravated robbery when a victim is unable
to identify the perpetrator.  See, e.g.,
Walker v. State, 180 S.W.3d 829, 832B33 (Tex. App.BHouston [14th Dist.] 2005,
no pet.) (holding testimony was legally and factually sufficient to support
conviction for aggravated robbery when one victim was unable to identify
perpetrator but another victim could make the identification); Grayson v.
State, 82 S.W.3d 357, 359 (Tex. App.CAustin 2001, no pet.) (holding
evidence sufficient to support conviction for aggravated assault although
victim was unable to identify defendant as the shooter but victim=s companion identified
defendant).  A conviction may also be
supported by the testimony of only one eyewitness.  Aguilar v. State, 468 S.W.2d 75, 77
(Tex. Crim. App. 1971).  Although Orrell
was unable to make an identification of appellant, Reddicks positively
identified appellant as the perpetrator, both at the scene of the crime and at
trial.  Although Reddicks could not see
his face up close at the time of the robbery, Reddicks testified she knew
appellant was one of the perpetrators because she bought crack cocaine from him
earlier that evening, and she saw him standing on the side of the road before
he attacked Orrell.  The jury had before
it all the relevant information concerning the identification of appellant, and
it was the jury=s duty to determine the credibility of Reddicks= testimony and to decide the weight
to be given to her testimony.  See
Garza v. State, 633 S.W.2d 508, 514 (Tex. Crim. App. 1982). 

Appellant next argues the evidence was legally and factually
insufficient because eyewitness Barbara Reddicks was under the influence of
narcotics at the time of the robbery. 
The fact that an eyewitness was intoxicated at the time of the robbery
does not automatically render the evidence insufficient to support a
conviction.  Jasso v. State, 112
S.W.3d 805, 809 (Tex. App.BHouston [14th Dist.] 2003, pet. ref=d.); see also Vasquez v. State,
67 S.W.3d 229, 237 (Tex. Crim. App. 2002) (holding a rational jury could
believe the eyewitness accurately identified the defendant as one of the
robbers despite the influence of narcotics; even under a factual sufficiency
review, the influence of an illegal drug would only be a factor to consider); Herrera
v. State, 462 S.W.2d 597, 599 (Tex. Crim. App. 1971) (quoting 97 C.J.S. Witnesses
' 59b at 454, AA witness is not rendered incompetent
by the fact that he was under the influence of a drug at the time of the
occurrence as to which he testifies . . . .@); Karpeal v. State, 628
S.W.2d 520, 524 (Tex. App.BFort Worth 1982, pet. ref=d) (holding eyewitness=s identification testimony that he
was Afairly inebriated@ at the time of the robbery goes only
to the weight of the testimony, not to credibility or sufficiency of the
evidence). 








In Jasso, two eyewitnesses, who were also victims, to
an aggravated robbery testified they were intoxicated at the time of the
robbery, but the intoxication did not affect their ability to observe or
recognize the robber.  Jasso, 112
S.W.3d at 809.  They could walk in
a normal manner and felt somewhat composed at the time of the robbery.  Id. 
The police officer interviewing them testified that neither eyewitness
seemed intoxicated, both demonstrated normal use of their faculties, and both
were coherent when interviewed.  Id.  This court held that, although the
eyewitnesses had consumed significant amounts of alcohol in the six hour period
preceding the robbery, this did not prevent them from remembering and
recounting what transpired and did not render the evidence legally insufficient
to support the conviction.  Id. 

Similar to Jasso, Reddicks was admittedly under the
influence of narcotics at the time of the robbery.  When Reddicks gave her statement identifying
appellant as one of the robbers, she informed Deputy Windsor she had been
smoking crack cocaine.  However, nothing
in the record indicates the cocaine impaired Reddicks= normal use of her faculties at the
time of the robbery or at the time she gave her statement to the police.  Furthermore, Deputy Windsor testified he
conducted a limited credibility test at the time Reddicks gave her statement
and found her statement was sufficiently corroborated by other credible
evidence.  Therefore, although Reddicks
may have been under the influence of narcotics at the time of the robbery, this
does not render her testimony insufficient to support appellant=s conviction.   

Appellant also argues the evidence is legally and factually
insufficient because Deputy Windsor testified that none of the State=s witnesses were credible.  However, this alleged assertion by Deputy
Windsor is not supported by the record. 
In his brief, appellant complains that Deputy Windsor testified crack
cocaine impairs a person and Anobody involved in this situation at that time is credible.@ 
Appellant, however, takes Deputy Windsor=s testimony out of context.  Deputy Windsor testified as follows:

Q:        Okay.  Wouldn=t you agree with me that crack cocaine has the ability
to impair somebody=s eyesight?

A:        I don=t know about their eyesight. I=m not a medical expert, as far as impair their
eyesight.                        

Q:        Okay. Would you agree with me that a person will suffer some
impairment as a result of smoking crack cocaine?

A:        Definitely.                  

Q:        Was that a yes?

A:        Yes. 

Q:        Okay. Now, did you - - did anybody take that into
consideration before taking her - - 








A:        Yes, sir. It=s - - it=s like
this. The question of credibility always arises in these kinds of - - these
kinds of cases.  Well, you have to - -
what I do, my test, the limited credibility, is nobody involved in this
situation at that time is credible. 
Really.  You have to go with
that.  But the situation at hand and what
they tell, if it ferrets out with other stuff that you find and rolls into
consistent manner with the same things other people are saying, that would lean
them to be credible at that time in reference to that incident. 

Deputy Windsor did not testify that none of the State=s witnesses were credible, nor was he
referring specifically to the State=s witnesses when he said Anobody involved in this situation at
that time is credible.@  Deputy Windsor
testified about the process he used on the scene to determine if a particular
witness was telling the truth, and gave a credible statement to him.  Ultimately, questions concerning the
credibility of witnesses and the weight to be given to their testimony are
solely for the jury=s determination.  See Moreno, 755 S.W.2d at 867.  Only the jury, not Deputy Windsor, was in the
position at trial to evaluate the credibility of the State=s witnesses, and we must defer to
that evaluation.   








Appellant further argues the evidence is legally and
factually insufficient because Orrell Apatently lied about several issues@ when he testified.  At trial, Orrell and Reddicks gave
conflicting testimony about their activities in the evening prior to the
robbery.  Reddicks testified she and
Orrell had been at Orrell=s apartment smoking crack cocaine, she was a prostitute,
Orrell had paid for her services that evening, and she went back to her room at
the Modo Inn to get more crack cocaine. 
In contrast, Orrell testified he did not know Reddicks was a prostitute,
he did not smoke crack cocaine that night, he was unaware Reddicks had done so,
and he went back to the Modo Inn so Reddicks could get Asomething.@ 
A witness may be believed even though some of his testimony may be
contradicted and part of his testimony accepted and the rest rejected.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  The jury, being
the sole judge of the facts and credibility of the witnesses, could choose to
believe or not believe the witnesses at all, or choose to believe or not
believe any portion of their testimony.  Id.; Rojas v. State, 171 S.W.3d
442, 445B46 (Tex. App.CHouston [14th Dist.] 2005, pet.ref=d). 
While Orrell=s testimony clearly conflicts with that offered by Reddicks,
questions concerning the credibility of witnesses and the weight given to their
testimony are to be resolved by the jury.  See Cain, 958 S.W.2d at 408B09; Moreno, 755 S.W.2d
at 867.  Moreover, despite any discrepancies in Orrell=s and Reddicks= testimony, these discrepancies only
concern extraneous matters unrelated to the robbery.  As the State argues, it is possible Orrell
may not have wanted to admit his participation in prostitution and drug use
prior to becoming a victim of a robbery. 
The jury, as the sole judge of the facts and credibility of the
witnesses, was entitled to disregard such discrepancies and believe Orrell=s and Reddicks= testimony concerning the events
surrounding the robbery.  See Sharp,
707 S.W.2d at 614.  








Finally, appellant argues the evidence is legally and
factually insufficient because two witnesses for the defense testified
appellant did not participate in the crime. 
At trial, the defense called two witnesses, Tameka Leday and Lanie
Diliegros.  Both Leday and Diliegros
testified that, while they were parked in front of the Modo Inn waiting for
someone, they noticed a short dark-skinned black man, who they later identified
as Jaroi Coleman, arguing with a white man on the sidewalk.  They testified there was another tall,
light-skinned black man, who they later identified as appellant, standing
nearby during the argument.  Both Leday
and Diliegros testified the victim was not inside his vehicle during the
attack; rather, Coleman hit the victim and knocked him onto the ground while
outside his vehicle.  Leday and Diliegros
further testified that only one man, Coleman, participated in the attack, and
appellant did not do anything to aid Coleman in the attack.  Leday and Diliegros testified appellant
attempted to pull Coleman away while Coleman attacked the victim and exclaimed,
ACome on, let=s go. 
Let=s get out of here.  Its not worth it.  It=s not worth it.@ 
Diliegros also testified that, although she could identify Orrell as the
victim, she could not tell if he was young or old or whether he had grey or
black hair, and she could barely see appellant=s face on the night of the
robbery.  Conversely, Reddicks, Luna, and
Orrell all testified that Orrell was inside his vehicle with the windows rolled
down at the time of the attack and that two men actively participated in the
attack.  In his statement to police,
appellant also said the victim was inside his vehicle at the time of the
attack.  

While the testimony of the defense witnesses clearly
conflicts with that offered by the State=s witnesses, questions concerning the
credibility of witnesses and the weight to be given to their testimony are to
be resolved by the trier of fact.  See
Moreno, 755 S.W.2d at 867.  The
testimony by these defense witnesses was subject to the jury=s determination of credibility based
on the witnesses= appearance at trial and in light of the other evidence
presented.  See Cain, 958 S.W.2d
at 408B09. 
The jury, being the judge of the facts and credibility of the witnesses,
could choose to believe or not believe the witnesses, or any portion of their
testimony.  See Moreno, 755 S.W.2d
at 867.  

Viewing the evidence in the light most favorable to
the jury=s verdict, we hold a rational trier
of fact could have found beyond a reasonable doubt that appellant was guilty of
aggravated robbery.  Appellant=s own statement placed him at the
scene of the robbery, the State=s witnesses all testified that two men actively participated
in the robbery, and Reddicks positively identified appellant as one of the
perpetrators, both at the scene and later at trial.  Additionally, one of the perpetrators hit
Orrell in the head with a gun, and even if appellant was not the party who used
or exhibited the gun, the surrounding circumstances show that appellant had
knowledge of Coleman=s use of the gun. 
Specifically, Reddicks and Orrell testified appellant actively
participated in the attack, fled the scene with Coleman afterwards, and while
searching the perimeter of the crime scene, police found appellant stepping out
of a wooded area and also found Coleman, who directed police to the whereabouts
of the gun.  Therefore, we overrule
appellant=s legal sufficiency point. 








Viewing all the evidence in a neutral light, the State=s evidence is neither so weak nor so
greatly outweighed by contrary proof as to undermine the beyond a reasonable
doubt standard.  Although two witnesses
for the defense testified that only Coleman, not appellant, actively
participated in the robbery, appellant admitted he and Coleman were present at
the time of the robbery, the victim and two witnesses for the State testified
that two men actively participated in the robbery, and an eyewitness for the
State positively identified appellant as one of the perpetrators.  Therefore, we hold the evidence is factually
sufficient to support appellant=s conviction for aggravated robbery, and we overrule
appellant=s factual sufficiency point. 

Accordingly, we affirm the judgment of the trial
court.  

 

                                                                              

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed June 27, 2006.

Panel consists of
Justices Anderson, Edelman, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  Orrell
testified Reddicks asked him to take her back to the Modo Inn to retrieve Asomething,@ while
Reddicks testified she went back to the Modo Inn to get some crack cocaine. 





[2]  A person
commits theft if he unlawfully appropriates property with the intent to deprive
the owner of the property.  TEX. PENAL
CODE ANN. ' 31.03(a) (Vernon Supp. 2005).